UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

|                              |                             |
|------------------------------|-----------------------------|
|                              | Chapter 11.                 |
| CALDOR, INC.-NY,             | Case No. 95 B 44080 (CB)    |
| THE CALDOR CORPORATION,      | Jointly Administered        |
| CALDOR, INC.-CT, et al.,     |                             |

                         Debtors.
-----------------------------------------------------------X

**ORDER, *INTER ALIA,* (A) AUTHORIZING
THE DEBTORS TO MAKE A FINAL DISTRIBUTION
TO HOLDERS OF ALLOWED OPERATING PERIOD
CLAIMS AND (B) EFFECTIVE UPON THE FILING
OF THE DISMISSAL EFFECTIVE DATE NOTICE WITH
THE COURT, AUTHORIZING THE DEBTORS TO SUBMIT
AN ORDER DISMISSING THE DEBTORS' CHAPTER 11
CASES AND GRANTING RELIEF RELATED THERETO**

Upon the Order (A) Scheduling Hearing to Consider the Debtors' Application for an

Order, *Inter Alia,* Authorizing  the Debtors to Make a Final Distribution to Holders of Allowed

Operating Period Claims, Dismissing the Debtors' Chapter 11 Cases Effective Upon the Filing of a

Dismissal Effective Date Notice With the Court and Granting Relief Related Thereto; (B) Establishing

the Record Date for Filing Wind-Down Claims; and (C) Fixing the Date For the Filing of Final Fee

Applications and Scheduling a Hearing to Consider Same entered on July 19, 2001 (the "Scheduling

Order") and the Application in support thereof dated July 17, 2001 ("Application") of The Caldor

Corporation, debtor and debtor in possession, for itself and on behalf of its affiliated debtors and

debtors in possession herein (collectively, the "Debtors"); and as evidenced by the affidavits of service

filed with the Court, due and sufficient notice of the Application having been given in accordance with

the Scheduling Order; and it appearing that the relief requested in the Application and at the Hearing is

necessary and in the best interests of the Debtors, their estates, and their creditors; and after due

deliberation and sufficient cause appearing therefor;

THE COURT HEREBY FINDS that:

A. On September 18, 1995 (the "Filing Date"), each of the Debtors filed a

voluntary petition for reorganization under chapter 11 of the Bankruptcy Code with the Clerk of this

Court (the "Chapter 11 Cases"). The Debtors have continued in the possession and management of

their assets and properties as debtors in possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.

B. The Chapter 11 Cases have been substantively consolidated pursuant to an

order of this Court. No trustee or examiner has been appointed.

C. Pursuant to section 1102 of the Bankruptcy Code, the Office of the United

States Trustee appointed an Official Committee of Unsecured Creditors ( the "Creditors' Committee")

and an Official Committee of Equity Holders (the "Equity Committee"). The Creditors' Committee has

been replaced by the Official Wind-Down Oversight Committee, and the Equity Committee has been

disbanded.

D. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157

and 1334 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States

District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). Venue

in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to

28 U.S.C. § 157(b).

E.     As evidenced by the affidavits of by mail and publication filed with the Court, the Debtors have provided due and sufficient notice of the hearing on the Application and the relief set forth in the Application in accordance with the Scheduling Order.

F.     The Allowed Operating Period Claims[1] have been fixed by orders of the Court.

G.     The Debtors, have either fully liquidated their respective assets or abandoned those assets of inconsequential value not reasonably capable of liquidation, do not have sufficient cash on hand to pay in full Allowed Operating Period Claims, and therefore there is no prospect of any distribution to holders of pre-petition priority claims and pre-petition general unsecured claims. As a result thereof, the stock of the Debtors is worthless, null and void.

H.     All fees payable under 28 U.S.C. § 1930 have been paid or will be paid when due by the Debtors.

I..     As set forth on the record at the Hearing, sufficient cause exists for the issuance of the injunctive relief set forth in paragraph 20 of this Order.

J.     As a result of the fact that the cash proceeds generated under the Wind-Down Program are insufficient to pay in full all creditors of the Debtors, the Debtors will have paid creditors according to the priorities established by the Bankruptcy Code and orders of the Court and ratably among creditors of equal priority.

K.     In accordance with the Wind-Down Order, and as evidenced by the affidavits of service filed with the Court, notice of the last day to file a proof of Operating Period Claim was (1) provided by mail to each known holder of an Operating Period Claim and (2) published.

---

[1]     Capitalized terms used and not defined herein shall have the meanings respectively ascribed to them in the Application unless the context requires otherwise.

L.	In accordance with the Scheduling Order, and as evidenced by the affidavits of service filed with the Court, notice of the last day to file a proof of an unpaid Wind-Down Claim was (1) provided by mail to each known holder of a Wind-Down Claim and (2) published.

M.	With respect to each disputed Operating Period Claim and each disputed unpaid Wind-Down Claim, notice of objection to such claim and an opportunity to be heard before the Court was afforded to each such holder.

N.	The Debtors have completed the winding up of their respective business affairs and have disposed of all claims by and against the Debtors in accordance with the priority provisions set forth in the Bankruptcy Code and orders of the Court.

O.	Good cause has been shown for the entry of this Order and entry of this Order is in the best interests of the Debtors, their estates and creditors.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT,

1.	The relief requested in the Application be, and it hereby is, granted.

2.	To the extent not settled or withdrawn, any and all objections to the Application be, and they hereby are, overruled and denied.

3.	The Debtors be, and they hereby are, authorized to make a final distribution (the "Final Distribution") to each holder of an Allowed Operating Period Claim listed in the Final Distribution Schedule in an amount equal to twenty-three percent (23%) of the amount of such holder's Allowed Operating Period Claim listed in the Final Distribution Schedule.

4.	The Debtors shall make the Final Distribution on or before October 8, 2001.

5.	The Debtors are required to make the Final Distribution only to the entity which is the holder of an Allowed Operating Period Claim as at the Final Distribution Record Date, *i.e.* August 23, 2001, and who is listed on the official claims register maintained by Poorman-Douglas Corporation pursuant to Bankruptcy Rule 5003(b) (the "Claims Register"), regardless of whether such holder sold such holder's Allowed Operating Period Claim (a) prior to the Final Distribution Record Date, or (b) subsequent to the Final Distribution Record Date but prior to the making of the Final Distribution.

6.	For purposes of making the Final Distribution, the Debtors, be, and they hereby are, authorized to rely upon the Claims Register as it exists on the Final Distribution Record Date and to make such distribution only to Holders of Allowed Operating Period Claims identified on the Claims Register as of the Final Distribution Record Date.

7.	If a holder of an Allowed Operating Period Claim fails to negotiate a check issued to such holder pursuant to the provisions of this Order on or before January 10, 2002, then the Debtors shall provide written notice (the "Failure to Negotiate Check Notice") to the holder of such Allowed Operating Period Claim advising such holder that unless such Final Distribution check is deposited within twenty (20) days after the date of such notice, then (a) the Debtors shall cancel such Final Distribution check, (b) the amount of cash attributable to such check shall be deposited into the Post-Dismissal Account, and (c) the holder of such Allowed Operating Period Claim will be automatically deemed to have waived its Allowed Operating Period Claim.

8.	If a holder of an Allowed Operating Period Claim fails to deposit such holder's Final Distribution check within the time fixed in the Failure to Negotiate Check Notice, then (a) the Debtors shall cancel such Final Distribution check, (b) the amount of cash attributable to such check

shall be deposited into the Post-Dismissal Account, and (c) the payee of such check will automatically

be deemed to have waived its Allowed Operating Period.

9.     If the check representing the Final Distribution to any holder or holders of an

Allowed Operating Period Claim is returned to the Debtors on or before November 7, 2001, then, if

the aggregate amount of the Final Distribution checks returned to the Debtors exceeds $250,000, the

Debtors shall publish a notice (the "Returned Check Notice") once in the Womens' Wear Daily and

The New York Times (national edition) on or before December 7, 2001, listing the name of such

holder and stating that unless such holder contacts the Debtors in writing on or before January 7, 2002

and provides the Debtors with a current address, (a) the Debtors shall cancel such Final Distribution

check, (b) the amount of cash attributable to such check shall be deposited in the Post-Dismissal

Account, and (c) such holder will automatically be deemed to have waived its Allowed Operating

Period Claim.

10.     If a holder of an Allowed Operating Period Claim fails to respond to the

Returned Check Notice on or before January 7, 2002, then (a) the Debtors shall cancel such Final

Distribution check, (b) the amount of cash attributable to such check shall be deposited in the Post-

Dismissal Account, and (c) the holder of such Allowed Operating Period Claim will automatically be

deemed to have waived its Allowed Operating Period Claim.

11.     If the aggregate amount of Final Distributions returned to the Debtors is less

than $250,000, then the Debtors shall have no obligation to publish the Returned Check Notice

required herein, and (a) the Debtors shall cancel such Final Distribution checks, (b) the amount of cash

attributable to such checks shall be deposited in the Post-Dismissal Account, and (c) the holders of

such Allowed Operating Period Claims will be deemed to have automatically waived their Allowed Operating Period Claim.

12.      The Order Approving Alternative Dispute Resolution of Operating Period Tort Claims Filed in the Caldor Chapter 11 Cases, Expanding the Debtors' Authority to Compromise and Settle Operating Period Tort Claims Within Specified Limits and Granting Related Relief dated July 7, 1999 and Order Amending The Order Approving

Alternative Dispute Resolution of Operating Period Tort Claims Filed in The Caldor Chapter 11 Cases, Expanding The Debtors' Authority to Compromise And Settle Operating Period Tort Claims Within Specified Limits and Granting Related Relief dated March 8, 2000 (collectively, the "Operating Period ADR Orders"), be, and they hereby are, amended such that (a) The Frank Gates Service Company ("Gates") shall be authorized to settle each disputed Included Claim without the need to seek the Court's approval, (b) the caps imposed on settlements involving cash payments under the Operating Period ADR Orders, *i.e.* $10,000 per claim with such cash payments not to exceed $2.25 million in the aggregate, shall not apply to any settlement entered into by Gates subsequent to the dismissal of the Chapter 11 Cases, and (c) except to the extent amended by this Order, the Operating Period ADR Orders and the procedures approved thereunder shall continue to remain in full force and effect subsequent to the dismissal of the Chapter 11 Cases.

13.      The Order Approving the Service Agreement for Included Claims with the Frank Gates Service Company dated November 10, 1999 (the "Gates Order") and the Service Agreement for Included Claims dated as of October 14, 1999 (the "Service Agreement") approved thereunder, be, and they hereby are, amended to provide that, solely to the extent that any Subsequently Allowed Included Claim has not been settled by Gates for a cash payment, then (a) the

payment to a holder of a  Subsequently Allowed Included Claim shall be paid by Gates, in full

satisfaction of such Subsequently Allowed Included Claim, on or before the thirtieth (30th) business day

following either the settlement of a Subsequently Allowed Included Claim for an Operating Period

Claim amount or the entry of a non-appealable, final order resolving such disputed Included Claim in an

amount equal to the product of (i) the sum of the Final First Interim Distribution Percentage (23%), the

Final Second Interim Distribution Percentage (12%) and the Final Distribution Percentage and (ii) the

resolved or settled amount of such holder's Subsequently Allowed Included Claim, and (b) Gates shall

not be required to reimburse the Debtors for distributions to a holder of a Subsequently Allowed

Included Claim.

14.     Any holder of a Subsequently Allowed Included Claim shall not be entitled to

any interest on the amount of such claim regardless of when a distribution thereon is made to or

received by such holder.

15.      Except  to the extent amended by this Order, the Gates Order and the Service

Agreement shall continue to remain in full force and effect subsequent to the dismissal of the Chapter 11

Cases.

16.     Upon the filing with the Court of a notice, substantially in the form annexed to

the Application as Exhibit "C," which form is hereby approved, confirming that the Final Distribution

was made by the Debtors (the "Final Distribution Notice"), the Debtors, be, and they hereby are,

authorized to file with Court an order (the "Final Dismissal Order") dismissing the Chapter 11 Cases

pursuant to section 1112 of the Bankruptcy Code .

17.     Within fifteen (15) days following the entry of the Final Dismissal Order, the

Debtors be, and they hereby are, required to (a) serve the notice of dismissal of the Chapter 11 cases

(the "Dismissal Notice"), substantially in the form annexed to the Application as Exhibit "D," which form is hereby approved, by first class mail, upon (i) each creditor listed in the schedules of assets and liabilities, and the statements of financial affairs filed by each of the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments, supplements and modifications thereto made in accordance with Bankruptcy Rule 1009, (ii) each holder of a pre-petition claim who filed a proof of claim, (iii) each holder of an Operating Claim, and (iv) all entities paid during the Wind-Down Period, and (b) publish the Dismissal Notice once in the Womens' Wear Daily, USA Today and The New York Times (national edition), which publication is hereby found to be adequate and sufficient.

18. Pursuant to section 349(b) of the Bankruptcy Code, the Court hereby finds that sufficient cause exists and hereby orders that, sections 349(b)(1) and 349(b)(2) shall not be applicable with respect to the Chapter 11 Cases.

19. The Debtors be, and they hereby are, authorized and empowered to contribute any balance remaining in the Post-Dismissal Account on the effective date of the dissolution of the Debtors to such non-denominational charity established to provide assistance to or to memorialize the victims of the September 11, 2001 attack on the World Trade Towers as may be reasonably selected by Ms. Helen Benson; provided, however, that Ms. Benson will provide to the Office of the United States Trustee written notice of the proposed recipient charity and the amount to be contributed at least thirty (30) days prior to the effective date of such contribution.

20. Pursuant to section 105(a) of the Bankruptcy Code, as of the date of this Order, all entities, including individuals, partnerships, corporations, estates, trusts or governmental units, who have held, hold or may hold Claims (as defined in section 101(5) of the Bankruptcy Code) or any

other liabilities against the Debtors arising prior to the date of this Order, including, but not limited to, Claims arising prior to the Filing Date, Claims arising during the Operating Period and Claims arising during the Wind-Down Period, are enjoined from taking any action against the Post-Dismissal Account or the Debtors, their officers, directors and employees as of January 22, 1999, the date of entry of the Wind-Down Order, the members of each of the Official Committee of Unsecured Creditors and the Official Wind-Down Oversight Committee solely in their capacity as members of said committees, agents, advisors and representatives, based in whole or in part upon any act, omission by the Debtors, their officers, directors and employees as of January 22, 1999, the members of each of the Official Committee of Unsecured Creditors and the Official Wind-Down Oversight Committee solely in their capacity as members of said committees, agents, advisors and representatives or other occurrence taking place during the period from the Filing Date to and including the date of this Order in any way relating to the Debtors or the Chapter 11 Cases.

21.     The Debtors be, and they hereby are, authorized to take any and all actions necessary or appropriate and to enter into all documents, instruments and agreements necessary or desirable to have each of the Debtors corporate existences dissolved under application state law.

22.     Pursuant to section 303(j) of the Bankruptcy Code, Bankruptcy Rule 9019, section 303 of the Delaware General Corporation Law, sections 1001-1009 of the New York Business Corporation Law and sections 33-881 *et seq.* of the Connecticut General Statutes, the Debtors are authorized to enter into all documents and agreements necessary to consummate and to implement the dismissal of the Chapter 11 Cases and to take any and all lawful actions required to consummate and to implement the dismissal of the Chapter 11 Cases and the transactions contemplated thereby, including the dissolution of the Debtors under applicable state law, all without further action by

their directors or shareholders and with like effect as if such actions had been taken by unanimous actions of the directors and the shareholders of the Debtors.

23.     In order to facilitate the completion of all required post-dismissal activities:

(a)     Helen Benson, the assistant controller of the Debtors, or the entity she may form for this purpose, be, and she hereby is, authorized and empowered to (i) act on behalf of the Debtors and take all required action in the name of the Debtors in connection with any and all post-dismissal tasks, and (ii) sign on behalf of the Debtors all documents, including, without limitation, the state dissolution petitions and Federal and state tax returns, and agreements necessary to fulfill her responsibilities in connection with the post-dismissal tasks.                    (b)     In order to memorialize Ms. Benson's authority, the Debtors be, and they hereby are, authorized and empowered to enter into a Post-Dismissal Service Agreement with Ms. Benson, or the entity she is affiliated with at such time.

24.     The Official Wind-Down Oversight Committee shall be, and it hereby is, disbanded upon the filing with the Court of the Final Distribution Notice.

25.     Notwithstanding the dismissal of the Chapter 11 Cases, the Court retains jurisdiction for the purposes of (a) enforcing the terms and conditions of this Order, including, but not limited to, the injunctive provisions of paragraph 20 of this Order, and (b) hearing and determining any motions which may be filed by Gates to seek to disallow Included Claims which fail to comply with the Operating Period ADR Procedures. For purposes of this paragraph 25, the Debtors' officers, directors and employees as of January 22, 1999, agents, advisors and representatives shall have standing to enforce the provisions of paragraph 20 of this Order.

26.     The Debtors be, and they hereby are, authorized and empowered

to take all steps necessary and appropriate to effectuate the terms of this Order and the making of the

Final Distribution.

Dated:  New York, New York
       October 2, 2001


                                 /s/ Cornelius Blackshear
                                 UNITED STATES BANKRUPTCY JUDGE